# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RONALD J. PIEMONTE, SUZZANNE E. PIEMONTE, MARIANNE A. WILLIS, and WILLIAM J. WILLIS, on behalf of themselves and others similarly situated | * * * * * | |
| Plaintiffs, | * * | CIVIL ACTION |
| vs. | * * | NO. |
| VIKING RANGE, LLC, THE MIDDLEBY CORP., OBERG & LINDQUIST CORP., MORRIS COUNTY APPLIANCE REPAIR, A&E APPLIANCES & REPAIRS, ABC CORPORATIONS 1.-5 and JANE and/or JOHN DOES 1-5, | * * * * * * * | |
| Defendants. | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*

## <u>JOINT NOTICE OF REMOVAL</u>

1.     Defendants Viking Range, LLC ("Viking") and The Middleby Corporation ("Middleby") jointly remove to this Court the state court action described below. Plaintiffs' Complaint ("Complaint") is removable to this Court, and this Court has jurisdiction, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, 1441(a) and 28 U.S.C. § 1453, because this is a putative class action involving more than 100 putative class members who are seeking to recover in excess of $5,000,000, and the parties are minimally diverse. *See* 28 U.S.C. § 1332(d).

## SERVICE OF THE SUMMONS AND PETITION

2.     On November 27, 2013, Plaintiffs Ronald and Suzzanne Piemonte and Marianne and William Willis filed an action in the Superior Court of New Jersey, Morris County entitled *Piemonte, et al. v. Viking Range, LLC, et al.*, Docket No. MRS-L-3145-13.

3.     On December 9, 2013, the Summons and Complaint were served on Middleby. Viking was served on December 11, 2013.

4.     This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b) as 30 days have not yet elapsed since the service of the Summons and Complaint on either Defendant.

5.     A true and correct copy of the Complaint, together with copies of all other process, pleadings, and orders served in the state court upon the Defendants are attached as Exhibit "A." To the best of the Defendant's knowledge and belief, these documents constitute all of the process, pleadings, and orders as of this date. *See* 28 U.S.C. § 1446(a).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the state court where the suit has been pending is located in this district.

## CITIZENSHIP OF THE PARTIES

7.     According to the Complaint, Plaintiffs Suzzanne Piemonte, Ronald Piemonte, Marianne Willis, and William Willis are citizens of Sussex County, New Jersey. (Compl. ¶¶ 1-4).

MEI 17001412v.1

8.     Viking is a Delaware Limited Liability Company whose sole member is Middleby Marshall, Inc., which is a Delaware corporation.[1]  Thus, Viking is a citizen of the State of Delaware.

9.     Middleby is a corporation organized under the laws of Delaware with its principal place of business in Illinois.[2]  Thus, Middleby is a citizen of both Delaware and Illinois.

### ALLEGATIONS IN THE PETITION AND PRAYER FOR RELIEF

10.    Plaintiffs' Complaint asserts that Plaintiffs bring this action on behalf of themselves and all others similarly situated, who are members of the following Class: "former, current and future purchasers of Certain Defendant Viking refrigerators who reside in New Jersey and who have been, are, or in the future will be injured and/or incur damages as [a] result of Defendant Viking refrigerators' defective door hinges."  (Compl. ¶ 15).  The refrigerators at issue are thirty-six inch bottom-mount models bearing the following model numbers: VCBB363, VCBB536, VIBB363, VIBB536, VCBB5361, DDBB363, DDBB536, DTBB363, DFBB363, DFBB536, or FDBB5361.  Viking issued voluntary safety recalls for these models in 2009 and 2013.

11.    Plaintiffs contend the recalls were issued because the refrigerator doors were apt to detach from the main unit.  (Compl. ¶¶ 18, 27).  Plaintiffs also claim that Viking unreasonably delayed repairing the doors.  (Compl. ¶ 24).

---

[1] The Complaint erroneously states that Viking Range, LLC is a Mississippi corporation with its principal place of business in Mississippi.  (Compl. ¶ 6).

[2] The Complaint erroneously states that Middleby is an Illinois corporation.  (Compl. ¶ 7).

ME1 17001412v.1

12.     Plaintiffs' Complaint asserts claims on behalf of themselves and the putative class members for: (1) violation of New Jersey Consumer Fraud Act; (2) strict products liability pursuant to N.J.S.A. 2A-58C, *et. seq.*; (3) products liability based on breach of express and implied warranties; (4) products liability based on negligence; and (5) loss of consortium. (Compl. ¶¶ 11-21).

13.     Plaintiffs seek to recover: (1) "Restitution and disgorgement of all amounts obtained by Defendants as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;" (2) "All recoverable compensatory and other damages sustained by Plaintiffs and the Class;" (3) "Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class in the maximum amount permitted by applicable law, including mandatory treble damages pursuant to the CFA;" (4) "An order (i) requiring Defendants to immediately cease its wrongful conduct as set forth above; (ii) enjoining Defendants from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; and (iii) requiring Defendants to refund to Plaintiffs and all members of the Class the funds necessary to repair or replace the refrigerators as appropriate;" (5) "Statutory pre-judgment and post judgment interest on the Class damages;" and (6) attorney's fees and costs of litigation. (Compl. ¶ 13).

## THIS COURT HAS JURISDICTION OVER THIS ACTION UNDER CAFA

14.     CAFA reflects Congress's intent to have federal courts adjudicate substantial class action suits brought against out-of-state defendants. *See* S. Rep. 109-14 at 43 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 41; H. Rep. 108-144, at 36-37 (2005).   To that end, CAFA

4

expressly provides that class actions filed in state court are removable to federal court. CAFA expands federal jurisdiction over class actions by amending 28 U.S.C. § 1332 to grant original jurisdiction for a putative class containing at least 100 members; where any member of the putative class is a citizen of a State different from that of any defendant; and in which the amount in controversy exceeds $5,000,000 in the aggregate for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d).

15.     This putative class action satisfies all the jurisdictional requirements under CAFA. Specifically, based on the allegations in the Complaint: (1) the proposed class consists of 100 or more members; (2) the parties are minimally diverse; (3) the amount in controversy exceeds the $5,000,000 jurisdictional threshold; and, (4) the exceptions to CAFA do not apply to this action. *See* 28 U.S.C. § 1332(d).

**A.     The Putative Class Size Exceeds 100 Members**

16.     CAFA requires that the putative class consist of at least 100 persons. 28 U.S.C. § 1332(d)(5). In the Complaint, Plaintiffs purport to bring this action on behalf of themselves and all other similarly situated residents of New Jersey who purchased or may purchase certain Viking refrigerators and who have been or may be injured as a result of the refrigerators' allegedly defective door hinge. (Compl. ¶ 15).

17.     The Complaint does not specify a class period; however, the Complaint references refrigerators manufactured as early as July 1999. (Compl. ¶¶ 17, 20). It also appears to extend for an infinite duration as it includes "future purchasers" and those who may be injured "in the

future." (Compl. ¶ 15).  Therefore, from the face of the Complaint the class period encompasses a period greater than fourteen years.

18.     Furthermore, Plaintiffs allege that a minimum of 76,000 defective refrigerators were sold during this period.  Approximately 1,800 of these refrigerators were purchased by New Jersey residents. (Moss Declaration, Exhibit B, at ¶ 10).  Thus, the putative class easily exceeds 100 persons.

**B.     Minimal Diversity of Citizenship Exists**

19.     The second CAFA requirement—that the parties be minimally diverse—also is met, because at least one putative class member is a citizen of a different state than at least one defendant.  28 U.S.C. § 1332(d)(2).

20.     The term "class members" means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.    28 U.S.C. § 1332(d)(1)(D).

21.     According to the Complaint, Suzzanne Piemonte, Ronald Piemonte, Marianne Willis, and William Willis are all citizens of New Jersey.  (Compl. ¶¶ 1-4).  Viking is a citizen of Delaware.  Middleby is a citizen of both Delaware and Illinois.

22.     Since the named Plaintiffs are citizens of the State of New Jersey and Middleby and Viking are citizens of the State of Delaware and Illinois, the parties are minimally diverse.

**C.     The Minimum Amount in Controversy Requirement Is Satisfied**

23.     To confer subject matter jurisdiction on this Court based on diversity of citizenship, the amount in controversy must exceed the sum or value of $5,000,000, exclusive of

6

interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individuals comprising a putative class are aggregated to determine if the amount in controversy exceeds the $5,000,000 jurisdictional threshold. 28 U.S.C. § 1332(d)(6); *Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 158 (3d Cir. 2013)

24. The removing party has the burden to prove by a legal certainty that the amount-in-controversy requirement is met. *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006). Generally, a court will begin by looking at the amount asserted in the complaint. *Id.* But when a complaint is "'silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy,' '[a] defendant's notice of removal then serves the same function as the complaint would in a suit filed in federal court.'" *Id.* at 474 (quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005)). Defendants can meet their burden of proof by establishing the number of units sold and the cost of those units. *Id.* at 475-76. It is also proper to include the amount of potentially recoverable punitive damages. *Zanger v. Bank of Am., N.A.*, CIV. 10-2480-RBK-KMW, 2010 WL 3910142, *4 (D.N.J. Oct. 1, 2010) (citing *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004)). Finally, attorneys' fees must be considered. *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007).

25. Plaintiffs' Complaint does not allege a specific dollar amount they are seeking. (*See generally* Compl.). But the relief sought by Plaintiffs exceeds $5 million. The damages sought on behalf of the proposed class include: (1) "Restitution and disgorgement of all amounts obtained by Defendants . . . together with interest thereon from the date of payment;" (2) "All recoverable compensatory and other damages sustained by Plaintiffs and the Class;" (3) A

7

"refund to Plaintiffs and all members of the Class the funds necessary to repair or replace the refrigerators;" (4) Actual and statutory damages "in the maximum amount permitted by applicable law, including mandatory treble damages pursuant to the CFA;" (5) Maximum allowable attorneys' fees; and (6) Pre-judgment and post-judgment interest on all damages. (Compl. p. 13).

26.     Based on registration and recall records reviewed by Viking, approximately 1,800 individual refrigerators bearing model numbers identified in the Plaintiffs' Complaint were purchased by New Jersey residents.[3] (Moss Decl. ¶ 10).  Plaintiffs' third category of relief seeks the funds necessary to replace the refrigerator of every class member.  (Compl. p. 13).  Applying the lowest historical retail cost of each refrigerator model identified in the Complaint, Plaintiffs seek replacement damages of approximately $9,602,141.[4]  (Moss Decl. ¶ 13).  This category of damages alone satisfies CAFA's jurisdictional amount.

27.     Plaintiffs also seek disgorgement of all funds, plus interest, obtained by Viking through the sale of the Viking refrigerators identified in the Complaint.  Again, Viking has identified approximately 1,800 individual refrigerators subject to the allegations of the Complaint.  This category of damages also seeks damages in multiple millions of dollars.  Plaintiffs also seek personal injury damages for their products liability claim.  Injured Plaintiffs

---

[3] This figure is based on a review of consumer registration records and recall records.  The figure only captures those refrigerators (1) registered by the purchaser or (2) unregistered but whose purchaser contacted Viking or its agent about either recall.

[4] This amount is conservative considering Moss used the lowest historical price for each model.  Prices have increased by approximately twenty percent over the last decade.  Accordingly, the replacement value in 2014 for the entire putative class is likely greater than $9.6 Million.

may seek damages for past and future medical expenses, pain and suffering, and loss of consortium. With approximately 1,800 potential class members, Plaintiffs seek personal injury damages in excess of $5,000,000.

28.     Finally, Plaintiffs' demand for statutory damages, including treble damages, under the Consumer Fraud Act and attorneys' fees further increases the damages sought. The Third Circuit has recognized that attorneys' fees could approach thirty percent of any judgment. *See Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) ("Fees could be as much as thirty percent of the judgment."). Thirty percent of category (3) of Plaintiffs' demand alone exceeds $2.8 Million.

29.     Plaintiffs' Complaint seeks damages well in excess of $5,000,000. CAFA's $5,000,000 amount-in-controversy requirement is satisfied here.

30.     Because the CAFA jurisdiction requirements are met, and because exceptions to the Court's exercise of jurisdiction do not apply, this case is properly removed under CAFA.

31.     Defendants are notifying the Court from which this case is being removed by contemporaneously giving notice of the filing of their Notice of Removal with the Superior Court of New Jersey, Morris County, pursuant to 28 U.S.C. § 1446(d).

For these reasons, the undersigned Defendants remove this action from the Superior Court of New Jersey, Morris County and respectfully request that the Court assume jurisdiction over this action.

Respectfully submitted,

By: ___*s/Edward J. Fanning, Jr.*___
      Edward J. Fanning, Jr.
      McCARTER & ENGLISH LLP
      Four Gateway Center
      100 Mulberry Street
      Newark, NJ 07102
      (973) 622-4444 (telephone)
      (973) 624-7070 (facsimile)
      efanning@mccarter.com
      *Attorneys for Defendants*
      *Viking Range, LLC and*
      *The Middleby Corporation*

Dated:  January 8, 2014

<u>CERTIFICATE OF SERVICE</u>

I certify that on January 8, 2014, I electronically filed a copy of this Joint Notice of Removal with the Clerk of the Court using the CM/ECF system and also served a copy of this document upon the parties via overnight mail at the following addresses:

Kevin E. Barber
Niedweske Barber Hager, LLC
98 Washington Street
Morristown, NJ 07960
Attorneys for Plaintiffs and Proposed Class Members

Oberg & Lindquist Corp.
511 Goffle Road
Wyckoff, NJ 07481

Morris County Appliance Repair
337 Route 46, Suite F
Rockaway, NJ 07866

A & E Appliances & Repairs
100 Fairview Road
Rockaway, NJ 07866

<u>      *s/ Edward J. Fanning, Jr.*   </u>
Edward J. Fanning, Jr.

# EXHIBIT A

NIEDWESKE BARBER HAGER, LLC
98 Washington Street
Morristown, New Jersey 07960
(973) 401-0064
www.n-blaw.com
Attorneys for Plaintiffs &
Proposed Class Members

| | |
|---|---|
| RONALD J. PIEMONTE,<br>SUZZANNE E. PIEMONTE,<br>MARIANNE A. WILLIS, and<br>WILLIAM J. WILLIS, on behalf of<br>themselves and others similarly situated<br><br>        Plaintiffs,<br><br>v.<br><br>VIKING RANGE, LLC, THE<br>MIDDLEBY CORP., OBERG<br>& LINDQUIST CORP., MORRIS<br>COUNTY APPLIANCE REPAIR,<br>A&E APPLIANCES & REPAIRS,<br>ABC CORPORATIONS 1-5, and<br>JANE and/or JOHN DOES 1-5,<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MORRIS COUNTY<br><br><br>DOCKET NO.   (3145-13<br><br>Civil Action<br><br><br>SUMMONS |

From the State of New Jersey
to the Defendant Named Above:   **VIKING RANGE, LLC**

     The Plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The Complaint attached to this Summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within **35 days** from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided). If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625. A $135.00 filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to the plaintiff's attorney whose name and address appear above, or to the plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyers Referral Services.  A list of these numbers is also provided.

Dated:   November 25, 2013

*Michelle M Smith*

Michelle M. Smith, Clerk
Superior Court of New Jersey

Name of Defendant to be served:
Address of Defendant to be Served:

VIKING RANGE, LLC
111 Front Street, Greenwood, MS 38930

ATLANTIC COUNTY:
Deputy Clerk, Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., 1st Fl.
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

BERGEN COUNTY:
Deputy Clerk, Superior Court
Case Processing Section
Room 119, Justice Center,
10 Main Street
Hackensack, NJ 07601-0769
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

BURLINGTON COUNTY:
Deputy Clerk, Superior Court
Attn:  Judicial Intake
First F. Courts Facility
49 Rancocas Road
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

CAMDEN COUNTY:
Deputy Clerk, Superior Court
Civil Processing Office
1st Floor, Hall of Records
101 S. 5th Street
Camden, NJ 08103
LAWYER REFERRAL
(609) 964-4520

LEGAL SERVICES
(609) 964-2010
CAPE MAY COUNTY:
Deputy Clerk , Superior Court
9 N. Main Street
Box DN-209
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

CUMBERLAND COUNTY:
Deputy Clerk, Superior Court
Civil Case Mgt Office
Broad & Fayette Streets
P.O. Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(609) 692-6207
LEGAL SERVICES
(609) 451-0003

ESSEX COUNTY:
Deputy Clerk, Superior Court
237 Hall of Records
465 Dr. M.L.King Jr. Blvd.
Newark, NJ 07102
LAWYER REFERRAL
(201) 622-6207
LEGAL SERVICES
(201) 624-4500
GLOUCESTER COUNTY:
Deputy Clerk, Superior Court
Attention: Intake
First Floor, Court House
1 North Broad Street
P.O. Box 129
Woodbury, NJ 08096

LAWYER REFERRAL
(609) 848-4589
LEGAL SERVICES
(609) 848-5360

HUDSON COUNTY:
Deputy Clerk, Superior Court
Superior Court, Civil Records
Brennan Court House - 1st Fl
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

HUNTERDON COUNTY:
Deputy Clerk, Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08862
LAWYER REFERRAL
(609) 735-2611
LEGAL SERVICES
(609) 782-7979

MERCER COUNTY:
Deputy Clerk, Superior Court
Local Filing Ofc, Courthouse
175 South Broad Street
P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

MIDDLESEX COUNTY:
Deputy Clerk, Superior Court
Administration Bldg., 3rd Fl.

1 Kennedy Sq., Box 2633
New Brunswick, NJ 08903
LAWYER REFERRAL
(908) 828-0053
LEGAL SERVICES
(908) 249-7600

MONMOUTH COUNTY:
Deputy Clerk, Superior Court
71 Monument Park
P.O. Box 1262
Court House, East Wing
Freehold, NJ 07728-1252
LAWYER REFERRAL
(908) 431-5544
LEGAL SERVICES
(908) 866-0020

MORRIS COUNTY:
Deputy Clerk, Superior Court
30 Schuyler Pl., P.O. Box 910
Morristown, NJ 07960-0910
LAWYER REFERRAL
(201) 267-5882
LEGAL SERVICES
(201) 285-6911
OCEAN COUNTY:
Deputy Clerk, Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL
(908) 240-3666
LEGAL SERVICES
(908) 341-2727

537524_1.doc
PASSAIC COUNTY:
Deputy Clerk, Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(201) 278-9223
LEGAL SERVICES
(201) 345-7171

SALEM COUNTY:
Deputy Clerk, Superior Court
92 Market Street, P.O. Box 18
Salem, NJ 08079
LAWYER REFERRAL
(609) 678-8363
LEGAL SERVICES
(609) 451-0003

SOMERSET COUNTY:
Deputy Clerk, Superior Court
Civil Division Office
New Court House, 3rd Floor
P.O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

SUSSEX COUNTY:
Deputy Clerk, Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860

LAWYER REFERRAL
(201) 267-5882
LEGAL SERVICES
(201) 383-7400

UNION COUNTY:
Deputy Clerk, Superior Court
1st Floor, Court House
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

WARREN COUNTY:
Deputy Clerk, Superior Court
Civil Division Office
Court House
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(201) 267-5882
LEGAL SERVICES
(201) 475-2010

NIEDWESKE BARBER HAGER, LLC
98 Washington Street
Morristown, New Jersey 07960
Phone: (973) 401-0064
Fax:   (973) 401-0061
www.n-blaw.com
Attorneys for Plaintiffs &
Proposed Class Members

RECEIVED & FILED
SUPERIOR COURT

2013 NOV 27  A 11: 44

MORRIS COUNTY
CIVIL DIVISION

| | | |
|---|---|---|
| RONALD J. PIEMONTE, SUZZANNE E. PIEMONTE, MARIANNE A. WILLIS, and WILLIAM J. WILLIS, on behalf of themselves and others similarly situated | : : : : : | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY |
| Plaintiffs, v. | : : : : | DOCKET NO. ( 3145-13  Civil Action |
| VIKING RANGE, LLC, THE MIDDLEBY CORP.,  OBERG & LINDQUIST CORP., MORRIS COUNTY APPLIANCE REPAIR, A&E APPLIANCES & REPAIRS, ABC CORPORATIONS 1-5, and JANE and/or JOHN DOES 1-5, | : : : : : : : | COMPLAINT & JURY DEMAND |
| Defendants. | : : : : | |

Plaintiffs Ronald J. Piemonte and Suzzanne E. Piemonte (hereinafter collectively referred

to as "the Piemonte Plaintiffs") and Marianne A. Willis and William J. Willis (hereinafter

collectively referred to as "the Willis Plaintiffs") (collectively referred to as the "Plaintiffs"), on

behalf of themselves and others similarly situated, by way of Complaint against Defendants,

state as follows:

<u>PARTIES</u>

1. Plaintiff Suzzanne Piemonte resides at 11 Fox Run Road, Township of Sparta, County of

Sussex, State of New Jersey.

2.   Plaintiff Ronald Piemonte resides at 11 Fox Run Road, Township of Sparta, County of Sussex, State of New Jersey.  At all times relevant, Plaintiff Ronald Piemonte has been the husband of Plaintiff Suzzanne Piemonte.

3.   Plaintiff Marianne A. Willis resides at 15 Fox Run Road, Township of Sparta, County of Sussex, State of New Jersey.

4.   Plaintiff William J. Willis resides at 15 Fox Run Road, Township of Sparta, County of Sussex, State of New Jersey.  At all times relevant, Plaintiff William J. Willis has been the husband of Plaintiff Marianna A. Willis.

5.   All similarly situated Plaintiffs in the class have purchased a Viking refrigerator during the recall years bearing one of the following model nos.:

     a.   VCBB363;

     b.   VCBB536;

     c.   VIBB363;

     d.   VIBB536;

     e.   VCBB5361;

     f.   DDBB363;

     g.   DDBB536;

     h.   DTBB363;

     i.   DFBB363;

     j.   DFBB536; or

     k.   FDBB5361.

6. Defendant Viking Range, LLC, a Mississippi corporation whose principal place of business is located at 111 Front Street, Greenwood, MS ("Viking"), manufactures and markets professional and commercial-type kitchen appliances for the home.

7. Defendant The Middleby Corp, an Illinois corporation whose principal place of business is located at 1400 Toastmaster Drive, Elgin, IL 60120 ("Middleby"), acquired Defendant Viking in or about December 2012.

8. Defendant Middleby is a leading producer of commercial cooking and food processing and packaging equipment for the food service industry.

9. Defendant Oberg & Lindquist Corp., a New Jersey corporation whose principal place of business is located at 511 Goffle Rd., Wyckoff, NJ 07481 ("Oberg"), is a retail kitchen and appliance center.

10. Defendant Morris County Appliance Repair, a New Jersey corporation whose principal place of business is located at 337 Route 46, Suite F, Rockaway, NJ 07866 ("MCAR"), repairs major household appliances.

11. Defendant A &E Appliances &Repairs, a New Jersey corporation whose principal place of business is located at 100 Fairview Road, Rockaway, NJ 07866 ("A&E"), repairs major household appliances.

12. ABC Corporations 1-5 are fictitious entities that owed a duty to the Plaintiffs and who breached that duty in causing Plaintiffs injury and damage generally set forth in this Complaint. Plaintiffs are currently unaware of the identity and potential liability of ABC Corporations 1-5.

13. Jane and/or John Does 1-5 are fictitious individual parties who owed a duty to the

3

Plaintiffs and who breached that duty in causing Plaintiffs injury and damage generally set forth in this Complaint. Plaintiffs are currently unaware of the identity and potential liability of Jane and/or John Does 1-5.

## INTRODUCTION AND CERTAIN DEFINITIONS

14. This is an action for violations of the New Jersey Consumer Fraud Act. N.J.S.A. §56:8-2, et seq. and the New Jersey Products Liability Act, N.J.S.A. §2A:58C, et seq. by and on behalf of a class of former, current and future purchasers who reside in New Jersey of certain Defendant Viking refrigerators. Because of Defendants' decisions, policies, plans, acts and/or omissions, these Plaintiffs and others similarly situated were, continue to be and will be injured and/or incur damages as a result of defective door hinges on certain Defendant Viking refrigerators.

15. In this pleading, the "Class" is limited to those former, current and future purchasers of Certain Defendant Viking refrigerators who reside in the State of New Jersey and who have been, are, or in the future will be injured and/or incur damages as result of Defendant Viking refrigerators' defective door hinges.

## VENUE

16. Pursuant to R. 4:3-2, venue is proper in Morris County because Defendants actually do business in that vicinage.

## FACTUAL BACKGROUND

### I.    Refrigerator Recalls

17. In or around April 2009, Defendant Viking reported to the U.S. Consumer Safety Product Commission ("CSPC") a manufacturing defect in a door hinge support mechanism on certain models of Defendant Viking built-in 48 inch wide side-by-side refrigerator/freezers and built-in 36 inch wide refrigerators with bottom freezers manufactured between July 1999 and April 2006.

4

18. The defective door hinge was reported to loosen, thereby allowing the refrigerator door to sag and separate from the unit.

19. Defendant Viking had received approximately fifty-seven (57) reports of doors detaching, including four (4) reports of injuries involving bruises, broken toes/fingers and strains. Also several incidents of minor damage to floors and counters were reported.

20. On or about June 16, 2009, the CSPC announced a recall of over forty-five thousand (45,000) Viking Built-In Side-by-Side Refrigerator/Freezers and Refrigerators with Bottom Freezers sold at various retail outlets and specialty stores from July 1999 to April 2006.

21. On or about July 5, 2011, Defendant Viking agreed to pay a Four Hundred Fifty Thousand Dollars ($450,000) civil penalty based on the CSPC claim that Defendant Viking was aware of the manufacturing defect for several years before reporting it to the CSPC.

22. By law, Defendant Viking should have reported the defect to the CSPC within twenty-four (24) hours of learning of the defect, but failed to do so.

23. Defendant Viking had sufficient information to conclude that the refrigerators contained a defect which could create a substantial product hazard or an unreasonable risk of serious injury or death.

24. Even after paying the civil penalty, consumers reported unreasonable delays in repairing the defective refrigerators, often coming after months of waiting and many telephone calls to Defendant Viking's Customer Service Department.

25. In many instances, the repairs failed to correct the problem.

26. On or about July 25, 2013, the CSPC announced a nationwide recall of approximately

5

thirty-one thousand (31,000) Defendant Viking built-in refrigerators with bottom freezers sold at retail appliance and specialty stores nationwide from November 1, 2005 through August 10, 2012.

27. These refrigerators posed an injury hazard to consumers due to the weld securing the pin to the pivot plate on the door breaking, causing the door to detach from the refrigerator and creating a risk of impact injury or fall.

28. Since its initial recall, Viking had received an additional thirty-nine (39) reports of falling refrigerator doors, including twelve (12) reports of injuries involving a fracture, bruises, strains, and cuts, and twenty-five (25) reports of minor property damage.

29. The CSPC announced the recall and urged consumers to stop using certain Defendant Viking refrigerators if there was any indication that the doors are not sealed properly.

II.     Piemonte Plaintiffs

30. In or about June 2002, the Piemonte Plaintiffs purchased from Defendant Oberg a Defendant Viking refrigerator (the "Refrigerator") with a bottom freezer, model DFBB363, serial number F04190203897.

31. In or about March 2011, the Piemonte Plaintiffs noticed that the refrigerator door was not working properly.

32. They called Defendant Viking's toll free number to obtain information on who in their area was authorized to repair Defendant Viking refrigerators.

33. The Piemonte Plaintiffs were directed to United Refrigeration ("United"), which made the necessary repairs, including rebuilding the motor.

34. United inquired if the refrigerator had been repaired per Defendant Viking's 2009 recall.

35. The Piemonte Plaintiffs said they were not been notified of the recall.

36. United advised them to immediately register the refrigerator with Defendant Viking, if they had not already done so, and to contact Defendant MCAR which would be able to perform the repairs necessitated by the recall.

37. In or about March 2011, United registered the refrigerator on behalf of the Piemonte Plaintiffs.

38. In or about March 2011, the Piemonte Plaintiffs contacted Defendant MCAR, which allegedly repaired the refrigerator in compliance with the 2009 recall.

39. On or about the morning of Sunday, July 7, 2013, Plaintiff Suzzanne Piemonte opened the refrigerator door. She heard a cracking noise and immediately saw the refrigerator door falling toward her.

40. She placed her arms across her face to protect herself against the weight of the refrigerator door, which had completely come off the door hinge.

41. The refrigerator door landed against her body, forcing her heard to jerk backwards, hitting the granite countertop, which was positioned immediately across from the refrigerator.

42. Plaintiff Suzzanne Piemonte was knocked to the kitchen floor with the refrigerator door landing directly on top of her.

43. She began screaming for her husband, Plaintiff Ronald Piemonte, who rushed to her aid. He found her lying on the floor with the refrigerator door on top of her.

44. Plaintiff Suzzanne Piemonte was surrounded by broken glass and those food items that had been stored on the refrigerator door but hit the floor when the door became unhinged. Water was spurting all over the kitchen from the area where the door had become unhinged.

45. Due to the weight of the refrigerator door, Plaintiff Ronald Piemonte was only able to push the door off of his wife rather than lifting it off of her.

7

46. Plaintiff Ronald Piemonte helped his wife from the kitchen floor to a chair for her to compose herself.

47. She did not believe any bones had broken so she was not immediately taken to the hospital.

48. Plaintiff Ronald Piemonte called United and left a message of urgency.

49. At or around 6 a.m. on Monday, July 8, 2013, Plaintiff Suzzanne Piemonte awoke to a throbbing painful headache, ringing in her right ear, numb and cold feet, bruises on her arms and legs, excruciating pain in her right lower back, and black and blue marks on her nose and underneath her eyes from where her arms had hit her face holding back the refrigerator door.

50. Plaintiff Ronald Piemonte immediately brought Plaintiff Suzzanne Piemonte to the Morristown Memorial Hospital's Emergency Room (the "Hospital").

51. Plaintiff Suzzanne Piemonte was advised that she had no broken bones but that her pre-existing medical conditions had all been severely exacerbated by the falling refrigerator door.

52. Upon returning home from the Hospital, Plaintiff Ronald Piemonte received a message from United to contact Defendant MCAR.

53. Upon arriving at the Piemonte Plaintiffs' home on or about July 8, 2013, Defendant MCAR confirmed that the screw attaching the pivot plate of the top hinge on the door was sheared resulting in the door detaching from the unit, causing the door to fall on Plaintiff Suzzanne Piemonte.

54. On or about Monday, July 8, 2013, Plaintiff Ronald Piemonte contacted Defendant Viking's customer service department to report the accident.

III. _Willis Plaintiffs_

55. In or about the spring 2003, the Willis Plaintiffs purchased from Littell's Appliance in

8

Sparta, New Jersey, a Defendant Viking refrigerator with a bottom freezer, serial number VCBB363.

56. In or about June 2009, the Willis Plaintiffs were notified of a recall requiring replacing the door hinges on the refrigerator, which they had repaired by Defendant A& E.

57. In or about August 2013, having not received any notice of a second recall, the Willis Plaintiffs contacted Defendant Viking's Customer Service Department to inquire if their refrigerator needed to be repaired or replaced.

58. The Willis Plaintiffs left numerous messages with Defendant Viking's Customer Service Department, but never received a return telephone call and the defective refrigerator remains in their kitchen.

IV.     Class Plaintiffs

59. The Plaintiffs' claims are typical of the claims of the members of the Class.

60. The proposed class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. The precise number of such persons is unknown and the facts on which the calculation of that number are presently within the sole control of Defendant Viking.

61. The Plaintiffs' claims and the claims of the Class, present questions of law and fact that are common to all Class members.

62. The Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same dangerous product as alleged herein. Defendants' negligent, careless, and/or reckless actions affected all

9

Class members similarly, and Defendants benefitted from the same type of practices and/or wrongful act as to each Class member.

63. The Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

64. The Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.

65. The Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation.

66. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

67. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

68. Because the losses, injuries, and damages suffered by each individual class member are modest compared to the expenses and burden of individual litigation, non-certification of the Class would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action.

69. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the Class as a class action would result in a significant saving of these costs.

70. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the

10

Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the dispositions of their interests through actions to which they are not parties.

71. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

72. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.  Whether, beginning as early as 2001 and continuing to 2009, Defendants deliberately concealed from the Plaintiffs and the Class the fact that an existing defect would cause the refrigerator door to become unhinged causing personal injury and property damage.

b.  Whether, following the 2009 recall, Defendants deliberately concealed from the Plaintiffs and the Class that the defect was not remediated causing refrigerator doors to become unhinged causing personal injury and property damage.

c.  Whether Defendants have taken all actions necessary and appropriate to insure that the defective door hinge has been remediated in order to avoid future personal injury and property damage resulting from the refrigerator door becoming unhinged from the unit.

d.  Whether Defendants have taken all actions necessary and appropriate to notify Plaintiffs and the Class that the refrigerator doors were defective and could cause personal injury and property damage beginning in 2001 and continuing to the present.

73. The Class claims set forth herein are maintainable under R. 4:32-1(b)(1), (2) and (3).

## COUNT I
### (Violation of New Jersey Consumer Fraud Act)

74. Plaintiffs repeat and reallege paragraphs 1 through 73 as if set forth at length herein.

75. At all relevant times, Defendants have been and continue to manufacture, market, sell, and/or repair professional and commercial-type kitchen appliances for the home.

76. As set forth above, Plaintiffs have been, during all times relevant to this cause of action "consumers" within the meaning of the New Jersey Consumer Fraud Act ("CFA").

77. The refrigerators are "goods" within the meaning of the CFA.

78. At all relevant times material hereto, Defendants conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

79. Defendants jointly and/or severally, committed an unconscionable commercial practice, in violation of the CFA, through deception, fraud, false pretense, false promise, misrepresentation and/or the knowing concealment, suppression or omission of any material fact in connection with the sale and advertisement of the merchandise relating to the recalled refrigerators.

80. Defendants caused Plaintiffs and Class members "ascertainable loss" by virtue of their violations of the CFA.

81. Plaintiffs' claims are typical of the claims of the members of the Class.

82. All the Class members were subject to the same unconscionable commercial practices as alleged herein. Defendants' policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unconscionable commercial practices and/or wrongful act as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

83. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and the Class members have sustained damages to their personal and real property.

84.    The Defendants' violation of the regulations promulgated under the New Jersey
Consumer Fraud Act render them strictly liable to the plaintiffs.

WHEREFORE, Plaintiffs, on behalf of themselves and all others in the Class, pray for relief
as follows:

    a.   An order certifying this case as a class action and appointing Plaintiffs to represent the
        Class and Plaintiffs' counsel as Class counsel;

    b.   Restitution and disgorgement of all amounts obtained by Defendants as a result of its
        misconduct, together with interest thereon from the date of payment, to the victims of
        such violations;

    c.   All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

    d.   Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class in the
        maximum amount permitted by applicable law, including mandatory treble damages
        pursuant to the CFA;

    e.   An order (1) requiring Defendants to immediately cease its wrongful conduct as set forth
        above; (2) enjoining Defendants from continuing to conceal material information and
        conduct business via the unlawful, unfair and deceptive business acts and practices
        complained of herein; and (3) requiring Defendants to refund to Plaintiffs and all
        members of the Class the funds necessary to repair or replace the refrigerators as
        appropriate;

    f.   Statutory pre-judgment and post-judgment interest on the Class damages;

    g.   Payment of reasonable attorneys' fees and costs as may be allowable under applicable
        law; and

13

h. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## COUNT II
(Strict Products Liability N.J.S.A. 2A-58C, et. seq.)

85. The Plaintiffs repeat and reallege paragraphs 1 through 84 as if set forth at length herein.

86. Defendant Viking, at all times relevant to this Complaint, is in the business of designing, manufacturing, marketing, and selling Defendant Viking refrigerator model nos. VCBB363, VCBB536, VIBB363, VIBB536, VCBB5361, DDBB363, DDBB536, DTBB363, DFBB363, DFBB536, and FDBB5361, for use by members of the general public.

87. At all times relevant to this Complaint, the refrigerators and its component parts were defective as to the design and manufacture, in that the bolts and hinges used to hold the refrigerator doors on the unit itself were defective and would sheer off causing the large heavy doors to fall off.

88. At all times relevant to this Complaint, the refrigerators and their component parts were defective as to design and manufacture at the time they left Defendant Viking's manufacturing facility.

89. Defendant Viking's refrigerators were unsafe for their intended use as they caused an unreasonably dangerous condition.

90. As a direct and proximate result of the defective condition of the refrigerators and their component parts, the Plaintiffs suffered and continue to suffer personal injury and/or injury to property.

14

91. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions.

WHEREFORE, Plaintiffs, on behalf of themselves and all others in the Class, pray for relief as follows:

a.   An order certifying this case as a class action and appointing Plaintiffs to represent the Class and Plaintiffs' counsel as Class counsel;

b.   Restitution and disgorgement of all amounts obtained by Defendants as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

c.   All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

d.   Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class in the maximum amount permitted by applicable law;

e.   An order (1) requiring Defendants to immediately cease its wrongful conduct as set forth above; (2) enjoining Defendants from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; and (3) requiring Defendants to refund to Plaintiffs and all members of the Class the funds necessary to repair or replace the refrigerators as appropriate;

f.   Statutory pre-judgment and post-judgment interest on the Class damages;

g.   Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

15

   h.   Such other and further legal and equitable relief as this Court deems necessary, just and

proper.

## COUNT III
### (Products Liability - Breach of Express and Implied Warranty)

92. Plaintiffs repeat and reallege paragraphs 1 through 91 as if set forth at length herein.

93. Defendants Viking, Middleby, and Oberg expressly and impliedly warranted that the

refrigerator was of merchantable quality and was safe and fit for the purpose intended when used

under ordinary conditions and in an ordinary or foreseeable manner.

94. The personal injury and/or injury to Plaintiffs' property were directly caused by

Defendants' breach of such express and implied warranties.

95. As a direct and proximate result of the breach of these express and/or implied warranties

Plaintiffs suffered and continue to suffer personal injury and/or injury to personal property.

96. Plaintiffs' claims are typical of those claims which could be alleged by any member of

the Class, and the relief sought is typical of the relief which would be sought by each member of

the Class in separate actions.

WHEREFORE, Plaintiffs, on behalf of themselves and all others in the Class, pray for relief

as follows:

   a.   An order certifying this case as a class action and appointing Plaintiffs to represent the

Class and Plaintiffs' counsel as Class counsel;

   b.   Restitution and disgorgement of all amounts obtained by Defendants as a result of its

misconduct, together with interest thereon from the date of payment, to the victims of

such violations;

   c.   All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

16

d.  Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class in the maximum amount permitted by applicable law;

e.  An order (1) requiring Defendants to immediately cease its wrongful conduct as set forth above; (2) enjoining Defendants from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; and (3) requiring Defendants to refund to Plaintiffs and all members of the Class the funds necessary to repair or replace the refrigerators as appropriate;

f.  Statutory pre-judgment and post-judgment interest on the Class damages;

g.  Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

h.  Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## COUNT IV
### (Products Liability - Negligence)

97. Plaintiffs repeat and reallege paragraphs 1 through 96 as if set forth at length herein.

98. At all times relevant hereto, Defendants Viking, Middlebury Corp., Oberg, MCAR, and A&E owed Plaintiffs a duty of reasonable care to design, manufacture, distribute, market, sell, supply, and/or repair the subject refrigerator in a condition safe for its intended and foreseeable uses.

99. Defendants, acting through their agents, sales representatives, servants, employees and/or other designees negligently, carelessly, and/or recklessly breached their duty of care to the Plaintiffs in one or more of the following ways:

a.  Manufacturing, assembling, designing, and/or distributing a defective refrigerator;

17

b. Failing to select sage and adequate components for the refrigerator;

c. Failing to properly inspect the subject refrigerators (model nos. VCBB363, VCBB536, VIBB363, VIBB536, VCBB5361, DDBB363, DDBB536, DTBB363, DFBB363, DFBB536, and FDBB5361) at the time they left control of Defendant Viking;

d. Failing to design and/or construct, assemble and manufacture the subject refrigerator in a manner sufficient to prevent the door from unhinging and falling off;

e. Negligently choosing, hiring and/or retaining agents, servants, employees and/or authorized subcontractors who improperly and/or deficiently manufactured, assembled, designed and/or distributed the subject refrigerators;

f. Advertising, marketing, selling, and distributing defective refrigerators; and

g. Otherwise failing to act reasonably under the circumstances.

100.    As a result of the negligence, carelessness and/or recklessness of Defendants, Plaintiffs sustained damages to real and personal property.

101.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions.

WHEREFORE, Plaintiffs, on behalf of themselves and all others in the Class, pray for relief as follows:

a. An order certifying this case as a class action and appointing Plaintiffs to represent the Class and Plaintiffs' counsel as Class counsel;

b. Restitution and disgorgement of all amounts obtained by Defendants as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

c.  All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

d.  Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class in the maximum amount permitted by applicable law;

e.  An order (1) requiring Defendants to immediately cease its wrongful conduct as set forth above; (2) enjoining Defendants from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; and (3) requiring Defendants to refund to Plaintiffs and all members of the Class the funds necessary to repair or replace the refrigerators as appropriate;

f.  Statutory pre-judgment and post-judgment interest on the Class damages;

g.  Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

h.  Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## COUNT V
### (Loss of Consortium)

102.    Plaintiffs repeat and reallege paragraphs 1 through 101 as if set forth at length herein.

103.    Plaintiff Ronald Piemonte was at the time of the accident and is now the lawfully wedded husband of Plaintiff Suzzanne Piemonte.

104.    Before suffering personal injuries as a result of the refrigerator door falling on top of her, Plaintiff Suzanne Piemonte was able and did perform all the duties of a wife including assisting in maintaining the home, and providing love, companionship, affection, society, sexual relations, moral support, and solace to Plaintiff Ronald Piemonte.

19

105.     Plaintiff Ronald Piemonte suffered a loss of consortium, services and support of his wife directly resulting from the personal injury she sustained in the accident caused by the defective refrigerator and negligent conduct of Defendants.

106.     As a direct and proximate result of Defendants' negligence, Plaintiff Ronald Piemonte suffered and continue to suffer a loss of consortium.

WHEREFORE, Plaintiffs, on behalf of themselves and all others in the Class, pray for relief as follows:

   a.   An order certifying this case as a class action and appointing Plaintiffs to represent the Class and Plaintiffs' counsel as Class counsel;

   b.   Restitution and disgorgement of all amounts obtained by Defendants as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

   c.   All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

   d.   Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class in the maximum amount permitted by applicable law;

   e.   An order (1) requiring Defendants to immediately cease its wrongful conduct as set forth above; (2) enjoining Defendants from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; and (3) requiring Defendants to refund to Plaintiffs and all members of the Class the funds necessary to repair or replace the refrigerators as appropriate;

   f.   Statutory pre-judgment and post-judgment interest on the Class damages;

20

g. Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

h. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## DESIGNATION OF TRIAL ATTORNEY

Kevin Barber, Esq. is hereby designated as trial counsel in the within matter.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial of all issues so triable in this case.

Respectfully submitted,
NIEDWESKE BARBER HAGER, LLC

Dated: November 25, 2013          By: _____

Kevin E. Barber
Counsel for Plaintiffs &
Proposed Class Members

21

## CERTIFICATION PURUSUANT TO RULE 4:5-1

1.      I certify that to my knowledge that the matter in controversy is not the subject of

any other action pending in any Court or of a pending arbitration proceeding.

2.      To my knowledge, no other action or arbitration proceeding is contemplated.

3.      I have no knowledge at this time of the names or any other parties who should be

joined in this action.

4.      I certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are willfully false, I am subject to punishment.

NIEDWESKE BARBER HAGER, LLC
Attorneys for Plaintiffs &
Proposed Class Members

By: _____

Kevin E. Barber

Dated:  25 NOV 13

# EXHIBIT B

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RONALD J. PIEMONTE, SUZZANNE E. PIEMONTE, MARIANNE A. WILLIS, and WILLIAM J. WILLIS, on behalf of themselves and others similarly situated | * * * * * | |
| Plaintiffs, | * * | CIVIL ACTION |
| VERSUS | * * | NO. |
| VIKING RANGE, LLC, THE MIDDLEBY CORP., OBERG & LINDQUIST CORP., MORRIS COUNTY APPLIANCE REPAIR, A&E APPLIANCES & REPAIRS, ABC CORPORATIONS 1.-5 and JANE and/or JOHN DOES 1-5, | * * * * * * | |
| Defendants. | | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## DECLARATION OF JANE MOSS IN SUPPORT OF VIKING RANGE, LLC and THE MIDDLEBY CORPORATION'S NOTICE OF REMOVAL

I, Jane Moss, hereby state and declare the following:

1.      I am an adult resident citizen of Leflore County, Mississippi. I am over the age of twenty-one, and I am competent to testify in this matter.

2.      In this declaration, I state facts in support of Viking and Middleby's removal of this case from New Jersey State Court to federal court.

3.      The facts in this declaration are based on my personal knowledge gained in the course of my business activities and are true and correct to the best of my knowledge, information and belief. If called as a witness, I could testify as to each of them.

4.      I serve as Vice President of Finance for Viking Range, LLC ("Viking") and I have served in that or similar positions for over years. My office is located at 111 Front Street, Greenwood, Mississippi 38930.

5.      I have reviewed the Complaint filed against Viking, Middleby, and other defendants in the Superior Court of Morris County, New Jersey by Ronald and Suzanne Piemonte and Marianne and William Willis.

6.      Viking was served with the Summons and Complaint on December 11, 2013.

7.      Viking is a limited liability company organized under the laws of Delaware. Viking's sole member is Middleby Marshall, Inc., a Delaware Corporation with its principal place of business in Illinois.

8.      In the ordinary course of its business, Viking maintains warranty registration records for customers that have purchased Viking products.  Customers may register their products with Viking by completing a warranty registration card that is typically included in the materials received by customers at the time of purchase or delivery of the product.  Customers may also register their products by telephone or through a link on Viking's website.

9.      Viking issued two safety recalls for eleven models of Viking refrigerators that are the subject of the Complaint filed by the Plaintiffs.  Recall notices were sent to customers who have registered their Viking refrigerator.  Other customers participated in the recalls after becoming aware of the recall through press releases, dealer notices, and other means.

10.     In the Complaint, Plaintiffs purport to bring claims on behalf of all New Jersey residents who have ever purchased the eleven models of Viking refrigerators subject to the two recalls. I am familiar with and have reviewed warranty registrations records, recall lists, and recall participation lists for customers residing in the State of New Jersey identified as owners of Viking refrigerator models identified in the Complaint.   Approximately 1,296 units of refrigerator models identified in the Complaint and subject to the first recall were purchased by New Jersey residents.  An additional 525 units of refrigerator models identified in the Complaint and subject to the second recall were purchased by New Jersey residents.   Accordingly, approximately 1,800 New Jersey residents are owners of Viking refrigerator models identified in the Complaint and would be putative members of the class.

11.     In addition, based on knowledge gained through my role as Vice President of Finance for Viking, as well as my review of the sales and dealer records maintained by Viking in the ordinary course of its business, I have reviewed the retail costs for the refrigerator models identified in the Complaint to determine the replacement value of each refrigerator model subject to the two recalls.  For purposes of this analysis, I utilized the lowest available historical retail price for each model.

12.     Plaintiffs seek multiple types of monetary damages in the Complaint, including the funds necessary to "replace the refrigerators as appropriate." Complaint ¶ 84e.

13.     As previously stated in paragraph ten, approximately 1,296 New Jersey residents purchased Viking refrigerator models which were subject to the first recall and identified in the Complaint.  As a result, if Viking were ordered to pay replacement costs for the entire class of New Jersey residents at the approximate lowest retail price, the total payments would equal approximately $6,528,784.  Furthermore, 525 units of the refrigerator models identified in the Complaint and subject to the second recall were purchased by New Jersey residents.  If Viking were ordered to pay replacement costs for the entire class of New Jersey residents at the approximate lowest retail price, the total payments would equal $3,073,357.  Therefore, the replacement damages Plaintiffs seek total approximately $9,602,141.

14.    Plaintiffs also seek "restitution and disgorgement of all amounts obtained by Defendants" related to the alleged misconduct cited in the Complaint, including "interest thereon from the date of payment."   Complaint ¶ 84b.   Plaintiffs identify eleven different Viking refrigerator models in the Complaint, some of which were manufactured as early as 1999. Accordingly, Plaintiffs seek restitution and disgorgement—plus interest—of funds obtained by Viking for over 1,800 units sold, plus interest, for a period of time spanning a decade.

I declare under penalty of perjury under the laws of the United States, 28 U.S.C. § 1746 that the foregoing statements are true and correct.

Signed, this ___7th___ day of January, 2014

Jane Moss, CPA, Vice President of Finance
for Viking Range. LLC.