UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RONALD J. PIEMONTE, SUZZANNE E. PIEMONTE, MARIANNE A. WILLIS, and WILLIAM J. WILLIS,** *individually and on behalf of all others similarly situated*,<br><br>**Plaintiffs,**<br><br>v.<br><br>**VIKING RANGE, LLC,** *et al.*<br><br>**Defendants.** | Civ. No. 2:14-cv-00124 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiffs Ronald J. Piemonte, Suzzanne E. Piemonte, Marianne A. Willis, and William J. Willis filed this putative class action against Defendants Viking Range, LLC ("Viking"), The Middleby Corporation ("Middleby," and together with Viking, "Moving Defendants"), Morris County Appliance Repair ("MCAR"), and A&E Appliances & Repairs ("A&E"). This matter comes before the Court on Moving Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion to dismiss is **GRANTED**.

      **I.  BACKGROUND**

      The facts alleged in the Complaint are as follows. Moving Defendant Viking manufactures and markets kitchen appliances, including refrigerators. Compl. ¶¶ 6, 17, ECF No. 1. Moving Defendant Middleby is producer of commercial cooking and food processing and packaging equipment for the food service industry and a local dealer of Viking products. Compl. ¶ 8. Plaintiffs are owners of Viking refrigerators. Compl. ¶¶ 30, 55.

      In April 2009, Viking reported a manufacturing defect in certain 48 Inch Side-By-Side refrigerator/freezer models and 36 Inch Bottom Mount refrigerator models manufactured through April 2006 to the United States Consumer Safety Product Commission ("CSPC"). Compl. ¶ 17. Specifically, Viking had received reports that the

1

doors on those refrigerators were detaching due to a defective door hinge.  Compl. ¶ 18. In June 2009, the CSPC announced a recall of over 45,000 Viking refrigerators sold from 1999 through 2006.  Compl. ¶ 20.  And in July 2011, Viking agreed to pay a civil penalty based on CSPC's claim that Viking was aware of the manufacturing defect for several years before reporting it.  Compl. ¶ 21.  Plaintiffs allege that, even after Viking paid the civil penalty, "consumers reported unreasonable delays" in receiving repairs to their refrigerators.  Compl. ¶ 24.  Plaintiffs also allege that the repairs often failed to correct the problem.  Compl. ¶ 25.  On July 25, 2013, the CSPC expanded the recall to include additional 36 Inch Bottom Mount refrigerator models manufactured from November 2005 through August 2012.  Compl. ¶ 26.

Plaintiffs allege various claims on behalf of themselves and a putative class of every New Jersey resident that has ever purchased one of eleven refrigerator models manufactured by Viking from 1999 through 2012.  Compl. ¶¶ 5, 14.  The Complaint seeks recovery for personal injury and property damage caused by the allegedly defective refrigerators.  Compl. ¶ 83.  Plaintiffs further allege that Viking "deliberately concealed" both the defect and the fact that the initial recall did not remedy the problem from Plaintiffs.  Compl. ¶ 72.  The Complaint makes the following specific allegations with respect to the named Plaintiffs.

### A.  Plaintiffs Ronald and Suzzanne Piemonte

Husband and wife Plaintiffs Ronald and Suzzanne Piemonte purchased a Viking refrigerator in June 2002.  Compl. ¶ 30.  Their refrigerator was subject to the initial recall.  Defendant MCAR repaired their refrigerator in compliance with the 2009 recall in March 2011.  Compl. ¶ 38.

On July 7, 2013, Mrs. Piemonte opened the refrigerator door and it detached from the refrigerator.  Compl. ¶ 39.  The refrigerator door fell on top of her, causing her to hit her head on a granite countertop and fall to the ground.  Compl. ¶¶ 39-42.  Mr. Piemonte heard his wife scream and was able to push the door off of her.  Compl. ¶¶ 43, 45.  The next day, Mrs. Piemonte went to the hospital, where she "was advised that she had no broken bones but that her pre-existing medical conditions had all been severely exacerbated by the falling refrigerator door."  Compl. ¶¶ 50-51.  Also on July 8, 2013, MCAR visited the Piemonte's home and "confirmed that the screw attaching the pivot plate of the top hinge on the door was sheared," which caused the door to detach and fall on Mrs. Piemonte.  Compl. ¶ 53.  Mr. Piemonte reported the accident to Viking that same day.  Compl. ¶ 54.

### B.  Plaintiffs William and Marianne Willis

Husband and wife Plaintiffs William and Marianne Willis purchased a Viking refrigerator in 2003.  Compl. ¶ 55.  Their refrigerator was subject to the 2009 recall. They were notified of the recall in June 2009 and had their refrigerator repaired by

2

Defendant A&E. Compl. ¶ 56. In August 2013, having not received any notice of the second recall, they contacted Viking to ask if their refrigerator needed to be repaired or replaced. Compl. ¶ 57. Although they left numerous messages with Viking's customer service department, they never received a response. Compl. ¶ 58.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

## III.    DISCUSSION

The Complaint asserts five causes of action:

(1) Count I: Violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-1, *et seq.* (the "CFA");
(2) Count II: Strict Products Liability under the New Jersey Products Liability Act, N.J. Stat. Ann. 2A-58C *et seq.* (the "PLA");
(3) Count III: Breach of Implied Warranty;
(4) Count IV: Products Liability – Negligence; and
(5) Count V: Loss of Consortium.

In their opposition papers, Plaintiffs admit that Counts III and IV are subsumed by the PLA and seek to consolidate those claims with Count II. Further, they did not respond to Moving Defendants' argument that the PLA subsumes Plaintiff Ronald Piemonte's loss of consortium claim in Count V.

3

The Court finds that the loss of consortium claim is derivative of Plaintiff Suzzanne Piemonte's individual PLA claim and cannot survive independently. N.J. Stat. Ann. 2A:58C-1(b)(2); *McDarby v. Merck & Co.*, 949 A.2d 223, 278 (N.J. Super. Ct. App. Div. 2008). Thus, the Court will consolidate Counts III, IV, and V into Count II. The Court will address the viability of Plaintiffs' CFA claim (Count I) and the consolidated PLA class action claim (Count II) below.

### A. The CFA Claim (Count I)

In Count I, Plaintiffs assert a claim for violations of the CFA. Moving Defendants argue that the PLA subsumes Plaintiffs' CFA claim. The Court agrees.

The PLA establishes a sole statutory cause of action "encompassing virtually all possible causes of action relating to harms caused by consumer and other products." *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007). If the "essential nature" of a claim sounds in products liability, the PLA applies and subsumes all other causes of action. *Id.* at 503-04. Accordingly, "if the facts of a case suggest that the claim is about defective manufacture, flawed product design, or failure to give an adequate warning, then the PLA governs and the other claims are subsumed." *New Hope Pipe Liners, LLC v. Composites One, LCC*, No. 09-3222, 2009 WL 4282644, at *2 (D.N.J. Nov. 30, 2009).

Conversely, if the "essential nature" of the claim is not a products liability claim, the plaintiff may maintain a separate cause of action." *New Hope*, 2009 WL 4282644, at *2. For instance, the PLA will not subsume a "representation based" claim under the CFA. *Id.* A representation based claim is one that "deal[s] with the situation where a product does not conform to specific representations made directly to the buyer." *Id.* at *3.

Plaintiffs argue that the PLA does not subsume their CFA claim because their claim is "representation-based." However, Plaintiffs have not identified any specific representations made by Viking to them. Rather, the essence of Plaintiffs claim is that they purchased a defective product that caused them damage – allegations which fall within the scope of a traditional products liability claim. Thus, the PLA subsumes Plaintiffs' CFA claim, and the Court will **GRANT** the motion to dismiss Count I. Count I is **DISMISSED WITHOUT PREJUDICE**.

### B. The PLA Claim (Count II)

Plaintiffs' consolidated Count II asserts a class action claim under the PLA. Moving Defendants argue that Plaintiffs' PLA class action fails to satisfy the requirements of Federal Rule of Civil Procedure 23. The Court agrees.

To maintain a class action, Plaintiffs must satisfy all four of Rule 23(a)'s prerequisites and fit within one of the three Rule 23(b) options. While the Complaint

4

states that Plaintiffs can satisfy any one of Rule 23(b)'s criteria, Plaintiffs' opposition papers clarify that they are proceeding under Rule 23(b)(3).  Rule 23(b)(3) permits a class action where "(i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012)

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is a demanding inquiry. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, (1997).  To assess predominance, a trial court must predict "how the issues will play out" at trial if a class is certified. *Marcus*, 687 F.3d at 600 (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008)). Each element of each plaintiffs' claim must be "capable of proof at trial through evidence that is common to the class rather than individual to its members." *Id.* (quoting *Hydrogen Peroxide*, 552 F.3d at 311).

To prevail on their PLA claims, Plaintiffs must prove injury, defect, causation, and damages. *Worrell v. Elliott & Frantz*, 799 F. Supp. 2d 343, 350 (D.N.J. 2011).  The Complaint fails to sufficiently allege that two of these elements – causation and damages – are capable of proof through common evidence.  To the contrary, the Complaint indicates that these elements are highly individualized.  Regarding causation, a fact-finder will need to consider factors such as service history, product life, normal use, installation, and whether a recall repair was performed on each unit. *See Marcus*, 687 F.3d at 604 (finding that predominance was not satisfied because determining why a particular class member's tire failed would require an individual examination of that class member's tire).  Further, the named Plaintiffs allege widely varying damages.  Two allege property damage, one alleges personal injuries based on exacerbated preexisting conditions, one alleges loss of consortium, and two have experienced no problems with their refrigerator. *See Bright v. Asset Acceptance, LLC*, 292 F.R.D. 190, 203 (D.N.J. 2013) ("Where actual damages are sought for each class member, individual damage calculations will overwhelm questions common to the class and therefore the predominance requirement is not satisfied.").  Thus, the Court finds that Plaintiffs have failed to adequately allege predominance and will **GRANT** the motion to dismiss the PLA class action allegations.[1]  The Court will dismiss Count II **WITHOUT PREJUDICE**.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** the motion to dismiss.  The Complaint is **DISMISSED WITHOUT PREJUDICE** as to all Defendants. *See Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) ("A court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a

---

[1] Because the Court finds that the Complaint fails to allege predominance, it need not reach the superiority prong of Rule 23(b)(3).

position similar to that of moving defendants or where the claims against all defendants are integrally related."). The Court shall grant Plaintiffs thirty days to file an amended complaint consistent with this Opinion. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: February 9, 2015**